JEFFREY A. ROSENFELD (CA Bar No. 136896)
RACHEL LOWE (CA Bar No. 246361)
**ALSTON & BIRD LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, CA 90071-3004
Telephone: (213) 576-1000
Facsimile: (213) 579-1100
Email:  jeffrey.rosenfeld@alston.com
Email:  rachel.lowe@alston.com

Attorneys for Defendant
**PROVIDE COMMERCE INC.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| TASTE OF NATURE, INC.<br><br>Plaintiff,<br><br>v.<br><br>PROVIDE COMMERCE, INC.<br><br>Defendant. | Case No. 2:18-cv-06879-R-SS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**<br><br>Date:  February 4, 2019<br>Time:  10:00 AM<br>Location: Courtroom 880<br>Roybal Federal Building and U.S. Courthouse<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**CONTENTS**

I. INTRODUCTION .................................................................................................1
II. FACTUAL BACKGROUND...............................................................................2
   A. The Parties' 2003 and 2011 License Agreements ..............................................2
   B. The Parties Amend the 2011 License Agreement ..............................................3
   C. Dispute Resolution Under the 2011 License Agreement ...................................5
III. LEGAL STANDARDS .......................................................................................6
IV. ARGUMENT AND CITATION OF AUTHORITIES .........................................7
   A. Defendant Is Allowed to Register Its SHARI'S GOURMET Mark .................8
   B. Defendant's Answer in the Opposition Proceedings Is Also Not an Attack on Plaintiff's SHARI Mark...................................................................................10
   C. Defendant's Continued Use of the Licensed Marks and Maintaining of its Materials Is Not a Breach ................................................................................11
   D. Plaintiff Was Required to First Mediate this Dispute......................................12
   E. Plaintiff's Trademark Infringement Claims Also Fail.....................................14
V. REQUEST FOR ATTORNEYS' FEES ..............................................................15
VI. CONCLUSION..................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 6

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ............................................................................ 7

*Camacho v. Target Corp.*,
   24 Cal. App. 5th 291, 234 Cal. Rptr. 3d 223 (2018) .................................... 13

*Cunningham & Associates, Inc. v. ARAG, LLC*,
   842 F. Supp. 2d 25 (D.D.C. 2012) ................................................................ 14

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................ 6

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1989) ........................................................................ 6

*Mack v. S. Bay Beer Distribs.*,
   798 F.2d 1279 (9th Cir. 1986) ........................................................................ 7

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
   No. 2:16-CV-02859-CAS, 2016 U.S. Dist. LEXIS 152155 (C.D. Cal.
   Oct. 31, 2016) ............................................................................................... 11

*In re Marriage of Nassimi*,
   3 Cal. App. 5th 667, 207 Cal. Rptr. 3d 764 (2016) ...................................... 13

*Med. Communs. Res. v. Glob. Initiative for Asthma, Inc.*,
   No. C10-5541BHS, 2010 U.S. Dist. LEXIS 98766 (W.D. Wash. Sep.
   2, 2010) ......................................................................................................... 11

*Music Makers Holdings, LLC v. Sarro*,
   No. 09-cv-1836, 2010 WL 2807805 (D. Md. July 15, 2010) ........................ 7

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
    119 F. Supp. 3d 1213, 1230 (C.D. Cal. 2015) .......................................................... 6

*Textron, Inc. v. The Gillette Co.*,
    180 USPQ 152, 1973 WL 19689 (TTAB 1973) ................................................ 5, 11

**Statutes**

Cal. Civ. Code § 1638 ................................................................................................ 13

Cal. Civ. Code § 1641 ................................................................................................ 13

Cal. Civ. Code § 1648 .................................................................................................. 9

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 6, 7

TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (June 2018), § 311.02(b) ................................................................................................ 10

## I. INTRODUCTION

This case should be dismissed because Plaintiff Taste of Nature ("Plaintiff") wrongly claims that Defendant Provide Commerce ("Defendant" or "Provide") has allegedly "attacked" Plaintiff's trademarks by filing an affirmative defense in a trademark opposition proceeding which, in turn, caused a breach of an agreement between Plaintiff and Provide. An affirmative defense cannot serve as a basis to "attack" or cancel Plaintiff's registered mark as a matter of law and, therefore, there has been no breach of any agreement between Plaintiff and Provide. Furthermore, by precipitously filing this lawsuit, Plaintiff has ignored the parties' contractual obligations to mediate this dispute prior to filing additional proceedings.

More specifically, as discussed in its First Amended Complaint ("Complaint"), Plaintiff claims to own the exclusive rights to use the mark SHARI in connection with specific categories of goods, including candy and snack foods (ECF No. 10 at ¶ 15). However, Provide has its own exclusive rights to the term SHARI'S BERRIES, among others, including an incontestable trademark registration. In addition to Provide's own rights, and pursuant to written agreements between Plaintiff and Provide, Plaintiff authorized Provide to use the mark SHARI'S GOURMET for specific categories of goods and services, including "the sale, marketing and advertising" of certain licensed products (ECF No. 10-1 at Exhibit 2 ("2011 License Agreement") § 2.1; *id.* at Exhibit 3 ("Amendment") ¶ 4). Contrary to well-established principles of law, Plaintiff now brings this lawsuit alleging that Defendant's affirmative defense in an opposition related to its application of its SHARI'S GOURMET mark with the U.S. Patent and Trademark Office for goods and services including retail store services and online retail services is an attack on Plaintiff's SHARI marks.

In addition, in filing the instant lawsuit against Provide, Plaintiff ignores its contractual obligations. Specifically, the existing license agreement between the parties requires the parties to first attempt to resolve disputes such as this through mediation rather than litigation. Because Provide has not attacked Plaintiff's SHARI marks (so

no breach of any agreement between Provide and Plaintiff has occurred) and because Plaintiff filed suit without first engaging in the contractually-required mediation process, Plaintiff's breach of contract claim (its Third Claim for Relief) should be dismissed. Likewise, Plaintiff's First and Second Claims for Relief, *i.e.*, its trademark infringement claims, should be dismissed because they depend on its improper termination of the agreement.

Finally, Section 7.2 of the parties' 2011 License Agreement contains an express pre-suit mediation provision. This Court should require Plaintiff to mediate this dispute under the procedure set forth in that agreement. To the extent that the Court is not inclined to dismiss this action outright, Defendant respectfully requests that the Court stay this litigation and order mediation between the parties, as required by the 2011 License Agreement. (ECF No. 10-1 at Exhibit 2, § 7.2(b)).

## II.  FACTUAL BACKGROUND

### A.  The Parties' 2003 and 2011 License Agreements

As described in Plaintiff's Complaint, Defendant's predecessor-in-interest and Plaintiff's predecessor-in-interest entered into a first settlement agreement with an accompanying license agreement in 2003. (Complaint ¶ 21; Exhibit 1 to the accompanying Declaration of Jeffrey A. Rosenfeld ("Rosenfeld Decl."), 2003 Settlement Agreement and 2003 License Agreement (collectively, "Original Agreement") § 1.1(j)).[1] The Original Agreement established that Defendant holds the rights to use its own "SHARI'S BERRIES" mark in connection with certain goods and services that do not require the license or permission of Plaintiff. (Exhibit 1, 2003 Settlement Agreement § 2.B). As part of the 2003 License Agreement, however, Plaintiff granted permission for Defendant to use the SHARI'S BERRIES mark in connection with certain additional goods. (2003 License Agreement § 2.2).

---

[1] Defendant concurrently requests judicial notice of this and other documents referenced in the Complaint, as well as the underlying and publicly available trademark filings.

As Plaintiff further alleges, the parties' predecessors entered into an additional license agreement on or around February 23, 2011, which provided that the 2003 Original Agreement would remain valid and subsisting except as modified by the terms of the 2011 License Agreement (Complaint ¶ 22). Pursuant to this 2011 License Agreement (ECF 10-1 at Exhibit 2), Defendant has a non-exclusive worldwide license from Plaintiff to use the SHARI marks and other specifically-authorized trademarks incorporating the SHARI marks "in connection with the sale, marketing[,] and advertising of the Licensed Products[2] and Chocolate Dipped Strawberries, Coffee[,] and Chocolate Dipped Fruit." (Complaint ¶ 23, 2011 License Agreement § 2.1). These other authorized marks include SHARI'S SWEETS, SHARI'S BAKERY, SHARI'S COOKIES, SHARI'S BROWNIES, SHARI'S CHOICE, and SHARI'S FAVORITES, among others (2011 License Agreement § 1.1(r); Amendment, § 4). Despite the Original Agreement containing the exact same provision as the 2011 License Agreement, Plaintiff does not contend in its Complaint that the 2003 Original Agreement has been breached; instead, Plaintiff claims that the 2003 Original Agreement is "valid and subsisting." (Complaint ¶ 22).

### B.   The Parties Amend the 2011 License Agreement

On or around November 21, 2016, Plaintiff and Defendant entered into an amendment to the 2011 License Agreement that added SHARI'S GOURMET and other terms as permitted uses of the SHARI marks. (Amendment § 4(iv), (x), and (xi)). Notably, the 2011 License Agreement allowed Defendant to use its SHARI'S GOURMET mark for the "sale, marketing, and advertising" of Licensed Products (2011 License Agreement, § 2.1) and did not prohibit Defendant from seeking a registration of SHARI'S GOURMET for services not covered under the scope of the License

---

[2] The Licensed Products include: "Baked Goods, Chocolate Covered Espresso Beans, Chocolate Dipped Semi-Dried Fruit, Chocolate Dipped Bottles, Chocolate Dipped Non-Fruit, Frozen Desserts, Popcorn, Salty Samplers, Specification Confections and Truffles." (2011 License Agreement § 1.1(p)).

Agreement. Accordingly, Defendant filed an application with the Trademark Office in order to protect its rights in that mark. (Exhibit 2 to Rosenfeld Decl., Shari's Gourmet Application and Post Publication Amendment).

Defendant's SHARI'S GOURMET application sought registration for "online retail store services, retail mail order catalogue services and retail shop-by-telephone services" relating to Defendant's goods (*e.g.*, "dipped fresh or frozen fruits, baked goods, marshmallows, [and] espresso beans"). (Exhibit 2 to Rosenfeld Decl., Shari's Gourmet Application and Post Publication Amendment).

On or around December 20, 2017, Plaintiff filed Opposition No. 91238538 at the Trademark Trial and Appeal Board ("TTAB") challenging Defendant's application and asserting a likelihood of confusion with its SHARI marks (*id.* ¶ 30). On or around March 14, 2018, Defendant filed an answer to that Notice of Opposition asserting several affirmative defenses, including a defense that "Opposer's Mark as defined herein has been abandoned as to one or more of the listed goods." (Exhibit 3 to Rosenfeld Decl.).

Five months later, on or about August 10, 2018, Plaintiff filed the original complaint in this action, but never served that complaint on Defendant. (ECF No. 1). The original complaint contained no request for an injunction for Defendant's alleged breach of the 2011 License Agreement, as required by Section 7.3.

Only *after* filing its original complaint did Plaintiff serve Defendant with an alleged notice of termination under Section 3.2(e) of the 2011 License Agreement, alleging that Defendant "attacked" its mark by asserting a counterclaim of invalidity in response to Plaintiff's Notice of Opposition. (Complaint ¶ 40; Exhibit 4 to Rosenfeld Decl.). Defendant's trademark counsel responded to that alleged termination notice, explaining why Plaintiff had no right to terminate the 2011 License Agreement under Section 3.2(e), as the Trademark Office is powerless to cancel a trademark based on an affirmative defense; instead, a party must assert a counterclaim of invalidity in order for the Trademark Office to act on that allegation, which Provide did not and has not

asserted. *See Textron, Inc. v. The Gillette Co.*, 180 USPQ 152, 153, 1973 WL 19689 (TTAB 1973) (a defense attacking the validity of a pleaded registration must be raised by counterclaim seeking cancellation of registration in order to be considered by the TTAB).

On September 25, 2018, counsel for Defendant sent Plaintiff a Dispute Notice under Section 7.2 of the Agreement. On October 25, 2018, Defendant further notified Plaintiff of its failure to abide by the ADR procedure mandated by the 2011 License Agreement and failure to seek injunctive relief for any alleged breach in its lawsuit. On November 2, 2018, after receiving this correspondence, Plaintiff filed a First Amended Complaint in this matter alleging, for the first time, a breach of the Agreement (*compare* ECF No. 1 *with* ECF No. 10).

### C.     Dispute Resolution Under the 2011 License Agreement

Article 7 of the 2011 License Agreement is entitled "Alternative Dispute Resolution ('ADR'); Binding Arbitration." Section 7.1 of the 2011 License Agreement states as follows:

> **ADR.** The parties have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them. It is the same spirit of cooperation they pledge to attempt to resolve any dispute amicably without the necessity of litigation. Accordingly, they agree if any dispute arises between them relating to the Agreement (a "Dispute"), that they will, except as provided in Section 7.3, first utilize the procedures specified in this Article (the "Procedure") prior to any additional proceedings.

(ECF No. 10-1 at Exhibit 2.)

The Procedure is described in Section 7.2 of the 2011 License Agreement, and includes, among other things: (i) a mandated period of direct negotiations for 30 days after receiving notice of a dispute (Section 7.2(a)); (ii) the selection of a mediator by the parties or by the senior federal district court judge for the Central District of California (Section 7.2(b)); and (iii) mediation within 45 days of the direct negotiation

period (Section 7.2(c). Only if the parties are unable to resolve their dispute using this mediation process may the aggrieved party proceed to bring a lawsuit (*id.* § 7.2(f)-(g)).

The 2011 License Agreement does contain one exception whereby Licensor may elect to bring a lawsuit *for injunctive relief* to enjoin a breach of the agreement without undertaking the Procedure described in Section 7.2 (ECF No. 10-1 at Exhibit 2 § 7.3 (Injunctive Relief)). Notably, the original complaint in this matter did not contain any claim for injunctive relief for breach of the agreement (ECF No. 1 ("Original Complaint")). Furthermore, the First Amended Complaint continues to request relief beyond injunctive relief (e.g., an awarding of monetary damages). (ECF No. 10, pp. 14-15).

### III. LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(6), a district court must dismiss a claim if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the claimant pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Bell Atl v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although a court generally accepts plaintiffs' allegations as true, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

This Court's review on a motion to dismiss "is confined to the complaint." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1230 (C.D. Cal. 2015). For purposes of a Rule 12(b)(6) motion to dismiss, however, material properly submitted with the complaint may be considered as part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989). Thus,

1  the referenced 2011 License Agreement between the parties may be considered because
2  it was properly submitted as part of the complaint (ECF No. 10-1 at Exhibits 2-3).

3  Additionally, the Court is permitted to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). The Court may therefore consider the Original Agreement as well as Defendant's Answer in the TTAB proceedings, both of which were alleged in, but not attached to, the Complaint. These documents are attached hereto as Exhibits 1 and 3. Further, the Court "may properly look beyond the complaint to matters of public record" without converting a Rule 12(b)(6) motion to dismiss into one for summary judgment. *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Because Trademark Office filings are considered matters of public record, the Court may consider such documents as well. *Music Makers Holdings, LLC v. Sarro,* No. 09-cv-1836, 2010 WL 2807805, at *2 n. 1 (D. Md. July 15, 2010) (courts may take judicial notice of matters of public record from sources such as the USPTO filings and electronic search system).

### IV. ARGUMENT AND CITATION OF AUTHORITIES

To state a claim for breach of contract under California law, Plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 735 F. App'x 241, 245 (9th Cir. 2018) (citing *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256, 263, 250 P.3d 1115, 1121 (2011)). In this case, Plaintiff's claim for breach of contract must be dismissed because it fails to allege facts that would constitute a breach by Defendant.

In its Amended Complaint Plaintiff alleges—incorrectly—three "defaults" under the 2011 License Agreement:

> (1) Defendant's filing of the Application for trademark registration of a Permitted Use, specifically of THE MARKS in connection with the

additional literal element "Gourmet" and challenging Plaintiff's rights to THE MARKS by and through its contention that Plaintiff has abandoned its interest in THE MARKS; (2) Defendant's refusal to comply with the provisions of Section 3.3 despite receiving notice on August 15, 2018, of Plaintiff's intention to immediately terminate Defendant's rights under the License Agreement; and (3) Defendant's continued use of THE MARKS despite having received notice of Plaintiff's intention to immediately terminate Defendant's rights under the License Agreement.

(Amended Complaint at ¶ 61).

However, such "defaults" are *not* sufficient to trigger Plaintiff's right to invoke Section 7.3 of the License Agreement and commence litigation without first mediating.[3] As demonstrated below, Defendant's filing of a trademark application for the SHARI'S GOURMET mark—a mark *specifically agreed to by Plaintiff* in the Amendment—and subsequent defense of its application in the opposition proceeding filed by Plaintiff, is not an "attack" on Plaintiff's mark sufficient to allow Plaintiff to ignore the carefully-crafted mediation procedure set forth in the 2011 License Agreement. Plaintiff's claims therefore fail as a matter of law.

### A. Defendant Is Allowed to Register Its SHARI'S GOURMET Mark

Plaintiff's rights in its SHARI mark do not allow Plaintiff exclusive use of the mark SHARI in connection with every good or service. Rather, the Original Agreement between the Parties makes clear that both Parties understood that each possessed certain rights due to their respective SHARI and SHARI'S BERRIES marks, both of which were registered and incontestable. (Exhibit 1 to Rosenfeld Decl. (2003 Settlement Agreement) § 2.A-B; *id.* (2003 License Agreement) § 2.2). Because of Defendant's existing rights, Plaintiff agreed that it would not advertise, market, or sell chocolate-dipped strawberries, chocolate-dipped fruit, chocolate-dipped bottles, cookies, or coffee

---

[3] If Defendant did not default under the 2011 License Agreement as alleged in default (1), the other two alleged defaults are inapplicable because they are byproducts of the first alleged default. If the 2011 License Agreement was improperly terminated by Plaintiff, then Defendant's alleged breaches resulting from not treating the license as terminated are not themselves breaches.

8

using the mark "Shari" (2003 Settlement Agreement § 6), as those rights belonged to Defendant alone.

Additionally, Section 5 of the 2003 Settlement Agreement between the parties provides that Defendant will not seek trademark "registration of any mark containing the term 'Shari' or 'Shari's' in any form . . . for Candy, the Selected Class 29 Goods or the Selected Class 30 Goods or for any services relating to the sale of the same." This careful exclusion preventing Defendant from filing for any mark containing the word SHARI for "Candy, the Selected Class 29 Goods or the Selected Class 30 Goods or for any services relating to the sale of the same" demonstrates that the Parties considered Defendant free to apply for marks containing the term "SHARI'S" in any *other* class of goods besides the specifically-listed classes of goods (or sale of those goods). Black's Law Dictionary (9th ed. 2009) (*expressio unius est exclusio alterius:* "to express or include one thing implies the exclusion of the other, or of the alternative."); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013) ("[T]he rule of construction *expressio unius est exclusio alterius*; *i.e.*, that mention of one matter implies the exclusion of all others is an aid to resolve the ambiguities of a contract."); *see also* Cal. Civ. Code § 1648 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."). Because the agreements between the parties only barred Defendant from the attempted registration of SHARI-formative marks in certain classes of goods (none of which are implicated by its current application), Defendant was permitted under the agreements to file its SHARI'S GOURMET application.

Contrary to Plaintiff's assertion, Defendant's application was not impermissibly overbroad in its attempt to register the SHARI'S GOURMET mark for "online retail store services, retail mail order catalogue services and retail shop-by-telephone services featuring" for Defendant's goods (*e.g.*, dipped fresh or frozen fruits, baked goods, marshmallows, and espresso beans). (Exhibit 2, Shari's Gourmet Application). As discussed above, the agreements between the Parties expressly allow Defendant to use

9
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

its SHARI'S GOURMET mark for the "sale, marketing, and advertising" of Licensed Products (ECF No. 10-1 at Exhibit 2, § 2.1) and implicitly allow Defendant to register its own trademarks using the word SHARI'S for goods and services not covered under the scope of the License Agreement (Exhibit 1 (2003 Settlement Agreement) § 5).

Defendant's SHARI'S GOURMET application for "online retail store services, retail mail order catalogue services and retail shop-by-telephone services" is expressly limited to services and do not cover any goods that Plaintiff may have rights to (Exhibit 2, Shari's Gourmet Application). Defendant's application is entirely consistent with the permissions granted pursuant to the parties' Amendment, since "online retail store services, retail mail order catalogue services and retail shop-by-telephone services" are considered services in separate classes. Nothing in the 2011 License Agreement restricts Defendant's use and registration of the services listed in Defendant's trademark application for SHARI'S GOURMET (ECF No. 10-1 at Exhibit 2, § 2.1).

In either event (whether the products are Licensed Products or not), the mere act of filing a trademark application regarding services involving products that are not in Class 29 or Class 30 does not violate any provision of the License Agreement and cannot constitute an "attack" on any rights Plaintiff may have in its SHARI marks.

### B. Defendant's Answer in the Opposition Proceedings Is Also Not an Attack on Plaintiff's SHARI Mark

Similarly, after Plaintiff filed its Opposition proceeding in the Trademark Office, Defendant's assertion of the affirmative defense that "Opposer's Mark as defined herein has been abandoned as to one or more of the listed goods" is not an "attack" on Plaintiff's marks. Indeed, it is axiomatic in trademark law that the Trademark Office cannot even consider the validity of a registration *unless* that challenging party asserts a *counterclaim* of invalidity; an affirmative defense alone is insufficient. *See, e.g.,* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (June 2018) ("TBMP"), § 311.02(b) ("The Board will not entertain a defense that attacks the validity of a registration pleaded by a plaintiff unless the defendant timely files a counterclaim

or a separate petition to cancel the registration."); *Textron, Inc. v. The Gillette Co.*, 180 USPQ 152, 153 (TTAB 1973) (a defense attacking the validity of a pleaded registration must be raised by way of cancellation of registration in order to be considered by the TTAB). Because Defendant has never filed a counterclaim of abandonment in the opposition proceeding, there is no "attack" against Plaintiff's rights or title to its SHARI marks as a matter of law.[4]

### C. Defendant's Continued Use of the Licensed Marks and Maintaining of its Materials Is Not a Breach

Plaintiff's other bases for alleging that Defendant has breached the 2011 License Agreement—*i.e.*, that Defendant failed to cease using the licensed marks and failed to return all materials to Plaintiff when it received Plaintiff's notice of termination—also fail as a matter of law, because they assume breach by virtue of Defendant's SHARI'S GOURMET application and Answer in the opposition proceedings. Because the 2011 License Agreement only allows Plaintiff to terminate the agreement in limited circumstances, none of which apply to the alleged facts of this case, Defendant is not required to comply with the termination provisions of Section 3.3 of the 2011 License Agreement, and its refusal to do so is not a separate basis to allege a breach. *See Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG,* No. 2:16-CV-02859-CAS (PLAx), 2016 U.S. Dist. LEXIS 152155, at *77 (C.D. Cal. Oct. 31, 2016) (finding declaratory judgment plaintiffs were likely to succeed on their claim that the defendant did not properly terminate the agreement, and that defendant was therefore not entitled to remedies for breach of the agreement); *see also Med. Communs. Res. v. Glob. Initiative for Asthma, Inc.*, No. C10-5541BHS, 2010 U.S. Dist. LEXIS 98766, at *5 (W.D. Wash. Sep. 2, 2010) (finding that the alleged termination by Plaintiff of an agreement was

---

[4] Furthermore, because this identified defense cannot affect any of Plaintiff's rights in or to the registered SHARI marks (absent a filed counterclaim), it is similarly true that Defendant has not "[done] anything or [suffered] anything to be done which may adversely affect any rights of [Plaintiff] in or to [the SHARI marks.]" 2011 License Agreement, § 5.2; Complaint ¶ 59.

ineffective because Defendants did not materially breach the agreement, and that Plaintiff was therefore the one in breach of the agreement).

### D.     Plaintiff Was Required to First Mediate this Dispute

Plaintiff should have invoked the License Agreement's mediation procedure to resolve its issues with Defendant's trademark registration and its opposition answer prior to bringing this lawsuit.  Section 7.1 of the 2011 License Agreement obligates both parties to work together "to attempt to resolve any dispute amicably without the necessity of litigation" by first using the mutually agreed ADR procedure described in Section 7.2 prior to any additional proceedings.

Plaintiff's attempt to invoke Section 7.3 of the 2011 License Agreement to avoid its responsibility to mediate its dispute with Defendant is belied by the relief sought in its original and amended complaints.  Section 7.3 allows Plaintiff to bring a lawsuit without going through the agreed ADR procedure only to seek immediate injunctive relief or an order restraining any threatened or future breach—not monetary damages. Notably, Plaintiff's original complaint did not even seek injunctive relief to enjoin Defendant's alleged breach of the 2011 License Agreement, which is required under the agreement for Section 7.3's exception to apply (Original Complaint, pp. 10-11). Plaintiff added a count seeking such an injunction in its Amended Complaint only *after* Defendant notified Plaintiff of its failure to properly invoke Section 7.3 (Complaint, pp. 14-15).  Additionally, in both the Original and Amended Complaints Plaintiff seeks monetary damages for Defendant's alleged breach, which are outside the scope of relief that Plaintiff can seek under Section 7.3 (2011 License Agreement § 7.3; Original Complaint, p. 11, ¶ 5; Complaint, p. 15, ¶ 6).

Tellingly, despite Plaintiff's premature and improper filing of this lawsuit and refusal to engage in the 2011 License Agreement's mediation procedure, Plaintiff has *never* sought a temporary restraining order or a preliminary injunction.  Plaintiff did not file this lawsuit for over a year after Defendant filed its application for the SHARI'S GOURMET trademark and almost five months after Defendant filed its answer to

Plaintiff's opposition proceeding.  Similarly, its additional two-month delay in filing the Amended Complaint and serving Defendant shows that Plaintiff is not seeking the "immediate injunctive relief" or an "order restraining any threatened or future breach" envisioned by Section 7.3, but is simply trying to avoid its obligations to mediate this dispute.

If Plaintiff's interpretation of the contract were correct, that would mean that Plaintiff would *never* have to honor the mediation requirements outlined in Sections 7.1 and 7.2 prior to litigation, so long as it characterized any dispute under the agreement as a "breach" and sought injunctive relief to enforce the agreement—an absurd result that would render Section 7.2 a toothless nullity.  Familiar maxims of contract interpretation require the Court to avoid this interpretation.  *See* Cal. Civ. Code § 1638 (courts may not read the contract in a manner that would lead to an absurd result); § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").  Instead, "the language of a provision should be construed in context, in view of the intended function of the provision and of the contract as a whole." *In re Marriage of Nassimi*, 3 Cal. App. 5th 667, 688, 207 Cal. Rptr. 3d 764, 783 (2016).  When interpreting contract terms, courts should avoid constructions that would render any of the provisions as "surplusage," "meaningless," or "irrelevant. *Id.*; *see also Camacho v. Target Corp.*, 24 Cal. App. 5th 291, 306, 234 Cal. Rptr. 3d 223, 236 (2018) (citing *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998)) ("Courts must interpret contractual language in a manner which gives force and effect to every provision, and not in a way [that] renders some clauses nugatory, inoperative or meaningless.").  In this case, the Court should require Plaintiff to honor its agreement to attempt to mediate disputes prior to resorting to litigation.

Finally, forcing Plaintiff to mediate this dispute rather than immediately proceed to litigation is in the public's best interest.  Agreements to mediate or arbitrate are enforceable and good public policy.  *See, e.g.*, 9 U.S.C. § 2 (written provisions to submit

to arbitration a controversy arising out of a contract are valid and enforceable); *see also Cunningham & Associates, Inc. v. ARAG, LLC,* 842 F. Supp. 2d 25, 30 (D.D.C. 2012) (ordering parties to abide by non-binding mediation provision in contract because the plaintiff "agreed to this clause and must abide by its provisions"); *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 769 F.Supp.2d 1065, 1068 (E.D. Tex. 2011) (noting the "longstanding and very strong public policy in this country favoring mediation and settlement").

The procedure set forth in Article 7 of the 2011 License Agreement where the parties agreed to first attempt to resolve any disputes arising under the agreement by mediation is an enforceable provision that was designed to relieve the parties and the courts of exactly the expense and effort now being expended. It should be enforced by dismissing this action.[5]

### E.   Plaintiff's Trademark Infringement Claims Also Fail

For the reasons explained above, the 2011 License Agreement remains in force and has not been properly terminated. Accordingly, Defendant remains licensed to use the SHARI marks for Permitted Uses under the agreement (2011 License Agreement § 2.1). Thus, a dismissal of Plaintiff's breach of contract claims requires a dismissal of Plaintiff's claims for trademark infringement, as Defendant would remain licensed to use its SHARI marks in commerce under that license agreement.

To the extent Plaintiff contends that Defendant's license does not extend to the classes of services listed in the SHARI'S GOURMET application, its trademark infringement claims nevertheless still fail as a matter of law. Plaintiff only has rights in its SHARI mark in connection with certain goods that are not impacted by, or proximate to, the goods or services for which Defendant has sought registration of

---

[5] In the event that this case is not dismissed, at the very least it should be stayed pending the outcome of the agreed mediation procedure. *Cf. Swartz v. Westminister Servs., Inc.,* No. 8:10-cv-1722, 2010 WL 3522141, at *1 (M.D. Fla. Sept. 8, 2010) ("courts routinely stay . . . proceedings to allow for implementation of the agreed-upon dispute resolution mechanism" and collecting cases).

SHARI'S GOURMET. Defendant's proposed services for its SHARI'S GOURMET mark are the following services:

> Online retail store services, retail mail order catalogue services and retail shop-by-telephone services featuring dipped fresh or frozen fruits, baked goods, marshmallows, espresso beans, whole or ground coffee, cocoa powder, crackers, meats, cheeses, food spreads, condiments, gift items such as plush toys and mugs, bags, trays and containers, gift baskets comprising various food and/or beverage items, and live flowers sold as a unit with food and/or beverage items.

These services are not proximate, or confusingly similar, to the goods for which Plaintiff has rights in its SHARI marks, which are as follows:

> glazed fruit; candied fruit; snack mixes consisting primarily of processed fruits, processed nuts, raisins, processed sunflower seeds, dried soybeans, pepitas, and also including sugar; candy; almond bark chips; and snack mixes consisting primarily of dried fruit, nuts, raisins, sunflower seeds, soybeans, pepitas, and sugar.

ECF No. 10-1, Exhibit 1 ("Shari Registrations"). Accordingly, Plaintiff's claims of trademark infringement should be dismissed for this additional reason, which is independent of the breach of contract action.

## V. REQUEST FOR ATTORNEYS' FEES

Section 7.4 of the 2011 License Agreement states that a prevailing party in a litigation commenced under Section 7.3 (as Plaintiff has alleged) "shall be awarded its costs and disbursements incurred therein, including reasonable attorneys' fees." Defendant requests that the Court therefore award its costs and reasonable attorneys' fees if this Motion is granted, *i.e.* upon ordering dismissal of this action or compelling mediation.

## VI.  CONCLUSION

For the reasons discussed herein, Defendant respectfully requests that the Court issue an order: dismissing Plaintiff's First Amended Complaint.  In the alternative, the Court should dismiss or stay this action pending mediation pursuant to the License Agreement and order Plaintiff to attend mediation using a Court-selected mediator. Defendant further requests an award of its fees in defending this action pursuant to the License Agreement.

DATED:  December 12, 2018        ALSTON & BIRD LLP

By: */s/ Jeffrey A. Rosenfeld*
JEFFREY A. ROSENFELD

Attorneys for Defendant
**PROVIDE COMMERCE INC.**