JEFFREY A. ROSENFELD (SBN 136896)
RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
E-mail: jeffrey.rosenfeld@alston.com
rachel.lowe@alston.com

HOLLY SAPORITO (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: holly.saporito@alston.com

BRADY COX (*pro hac vice*)
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3443
Facsimile: (214) 922-3843
E-mail: brady.cox@alston.com
Attorneys for Defendant
**PROVIDE COMMERCE, INC.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TASTE OF NATURE, INC.,

Plaintiff,

v.

PROVIDE COMMERCE, INC.,

Defendant.

Case No.: 2:18-cv-06879-R-SS

Assigned to the Hon. Manuel L. Real

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Date: Feb. 4, 2019
Time: 10:00 AM
Location.: Courtroom 880, Roybal Federal Building and U.S. Courthouse

Complaint Filed: August 10, 2018
Trial Date: N/A

Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 24, "Opposition") fails to demonstrate any viable legal theory that would prevent the dismissal of this case. Plaintiff's causes of action all stand on the same shaky foundation of Plaintiff's allegation that a single affirmative defense alleged by Defendant constitutes an "attack" under the 2011 License Agreement between the parties. But the law provides that an affirmative defense is not an attack on a mark, and, as a result, Plaintiff fails to state a claim for breach of contract.

Moreover, Plaintiff brought this action in violation of its express agreement in Section 7.1 of the 2011 License Agreement to first attempt to negotiate a resolution between the parties, and this action should be dismissed, or at least stayed, while the parties complete mandatory mediation. Plaintiff's interpretation of Section 7.1 and Section 7.3 to avoid its ADR obligation runs counter to the plain language of the mediation requirement and runs afoul of common sense—Sections 7.1 and 7.2 would have no binding effect if a party could always file a lawsuit seeking both monetary and injunctive relief regarding the contract without actually taking any steps to seek immediate injunctive relief. Plaintiff's failure to diligently seek "immediate injunctive relief" in this Court demonstrates that its reliance on Section 7.3 of the 2011 License Agreement to escape mediation is misplaced.

As further detailed herein, nothing in Plaintiff's Opposition shows that the claims in its First Amended Complaint ("FAC") were properly pleaded. The Court should therefore dismiss Plaintiff's claims for relief and deny its request for leave to further amend its previously amended Complaint as an amendment would be futile; there are no specific facts Plaintiff could add to salvage its claims.

## I. Defendant's Motion to Dismiss Should Be Granted

### A. Defendant Could Not Have Breached the 2011 License Agreement Because Plaintiff Agrees that Defendant Was Legally Entitled to File Its Trademark Application

Plaintiff first argues in its Opposition that the FAC properly pleads all the elements of a breach of contract claim, including a breach of the 2011 License Agreement (ECF No. 24, p. 5). Plaintiff's argument, however, is belied by admissions made in its Opposition.

Specifically, the FAC alleges three breaches of the 2011 License Agreement, all of which stem from Defendant's allegedly unauthorized filing of a trademark application for the SHARI'S GOURMET mark:

> (1) **Defendant's filing of the Application for trademark registration** of a Permitted Use, specifically of THE MARKS in connection with the additional literal element "Gourmet" and challenging Plaintiffs rights to THE MARKS by and through its contention that Plaintiff has abandoned its interest in THE MARKS;
>
> (2) Defendant's refusal to comply with the provisions of Section 3.3 despite receiving notice on August 15, 2018, of Plaintiff' *[sic]* intention to immediately terminate Defendant's rights under the License Agreement; and
>
> (3) Defendant's continued use of THE MARKS despite having received notice of Plaintiff's intention to immediately terminate Defendant's rights under the License Agreement.

(FAC (ECF No. 10), ¶ 61 (emphasis added)). However, in its Opposition, Plaintiff now asserts that "Plaintiff has ***not*** alleged that Defendant's efforts to register the licensed 'Shari [sic] Gourmet' trademark constituted a breach of contract." (ECF No. 24, p. 7 (emphasis added).) Instead, Plaintiff now alleges that it was "events that occurred in connection with [Defendant's registration] efforts," *i.e.*, statements made in response to

the opposition Plaintiff filed to block registration of Defendant's SHARI'S GOURMET mark, that "gave rise to Plaintiff's breach of contract claim."[1] (*Id.*)

This argument is nonsensical. If Defendant was contractually permitted to seek registration of its SHARI'S GOURMET mark—which Plaintiff does not dispute—it logically flows that Defendant was also entitled to defend its application in the Trademark Office proceedings. By filing an Opposition to Defendant's Application in the Trademark Trial and Appeal Board ("TTAB"), it was Plaintiff—not Defendant—that was the "attacker." Defendant's Answer in the TTAB proceedings simply included defenses to Plaintiff's attack on the registration of Defendant's SHARI'S GOURMET mark. (*Cf.* FAC (ECF No. 10) ¶ 30.)

As described at length in Defendant's motion to dismiss, the mere listing of an affirmative defense of abandonment (without a corresponding counterclaim) does not, legally, constitute an "attack" on Plaintiff's mark, because the TTAB will not, as a matter of law, address an abandonment argument unless such argument is made in a counterclaim. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 311.02(b); *Textron, Inc. v. The Gillette Co.*, 180 USPQ 152, 153 (TTAB 1973). Thus, Plaintiff's Opposition effectively concedes that the FAC's first alleged "default," *i.e.*, the activities related to Defendant's SHARI'S GOURMET application, is not a properly-pleaded breach of the Parties' agreement.

Similarly, the remaining alleged defaults Plaintiff claims in the FAC spring from the first alleged default. If the first pleaded default was not a breach, then the second and third pleaded defaults cannot separately constitute breaches of the 2011 License Agreement. If Defendant did not breach the agreement through its Answer to Plaintiff's

[1] Because Plaintiff's first and third arguments—*i.e.*, that it properly pleaded the elements of a breach of contract claim (Opp. Argument IV.A) and that Defendant's ability to file a trademark application for its SHARI'S GOURMET mark is "irrelevant" (Opp. Argument IV.C)—are inextricably intertwined, they are addressed together in this Section.

Opposition and remained licensed to the use the SHARI marks, then it did not need to comply with Section 3.3 of the Agreement or cease using the marks. Accordingly, Plaintiff's entire breach of contract claim hinges on whether Defendant's listing of an affirmative defense in response to Plaintiff's opposition to Defendants' trademark application constitutes an "attack" on Plaintiff's rights or title in the SHARI marks. Because it does not, Plaintiff's breach of contract claims must be dismissed. Fed. R. Civ. P. 12(b)(6); *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256, 263, 250 P.3d 1115, 1121 (2011)) (a breach is a required element for a breach of contract action in California).

**B. The "Plain Language" of the Agreement Does Not Define an "Attack," But a Defense Is Not an Attack**

Plaintiffs next argues that the "plain language of the License Agreement (not to mention general trademark laws)" supports its contention that Defendant's filing of an affirmative defense alleging the nonuse of certain goods in Plaintiff's registrations (that is, stating that Plaintiff may no longer sell certain goods using the mark) is an "attack" sufficient to warrant the invocation of Section 7.3 of the License Agreement (ECF No. 24, p. 6). In doing so, however, Plaintiff fails to point to: (i) ***any*** language in the License Agreement other than the "attack" provision; or (ii) any "general trademark laws" that support its contention that such a defense is an attack.

Contrary to Plaintiff's assertion in its Opposition, the "plain language" of the 2011 License Agreement does not define what actions would or would not constitute an attack (ECF No. 10-1, Exhibit 2, § 3.2(e)). Indeed, the contract is silent regarding "attacks" on Plaintiff's rights and title to the marks except to say that attacks would constitute a breach. (*Id.*) Common sense dictates that an "attack" on Plaintiff's rights and titles to the mark requires an action that could adversely affect either Plaintiff's rights or its title. Defendant's affirmative defense can have no effect on Plaintiff's rights or title to its SHARI marks, and therefore is not an attack under any reasonable interpretation.

To the extent that the Court finds this language to be ambiguous (Defendant contends it is not), it is this Court that must determine, as a matter of law, the meaning of contractual provisions, and Plaintiff has not alleged that any additional facts beyond the four corners of the 2011 License Agreement are required for the Court to interpret this contractual provision. Thus, this issue is ripe for dismissal under Rule 12(b)(6). *Viacom Int'l, Inc. v. MGA Entm't, Inc.*, No. CV 15-9621-R, 2016 U.S. Dist. LEXIS 93259, at *13-14 (C.D. Cal. July 18, 2016) (holding that a party "must do more than argue a self-serving interpretation of a contract term—it must offer evidence raising an issue of fact as to contract interpretation. Otherwise, if there is no conflict in the extrinsic evidence, the court simply construes the contract as a matter of law."); *see also Oceanside 84, Ltd. v. Fid. Fed. Bank*, 56 Cal. App. 4th 1441, 1451 (1997) (quoting *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) ("It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.").

Furthermore, the "general trademark laws" Plaintiff refers to actually foreclose its argument, showing instead that Defendant's argument is correct as a matter of law. Indeed, the Trademark Office's own rules and decisions make clear that the mere filing of an affirmative defense is not itself an "attack" on a mark. *See, e.g.,* TBMP, § 311.02(b); *Textron, Inc. v. The Gillette Co.*, 180 USPQ 152, 153 (TTAB 1973); *Thuron Industries, Inc. v. Conard-Pyle Co.*, 579 F.2d 633 (CCPA 1978) ("***[A] registration*** pleaded in an opposition or in a petition to cancel ***may be attacked only by way of a counterclaim for cancelation*** thereof.") (emphasis added); *see also* 37 C.F.R. § 2.106(b)(3)(ii) ("An attack on the validity of a registration pleaded by an opposer will not be heard unless a counterclaim or separate petition is filed to seek the cancellation of such registration."). Because a registered mark ***cannot be attacked*** in an opposition proceeding except by way of a counterclaim for cancellation, Defendant's affirmative defense (which was not accompanied by a corresponding counterclaim) cannot

constitute an attack on Plaintiff's mark, as a matter of law. TBMP, § 311.02(b); *Textron, Inc. v. The Gillette Co.*, 180 USPQ 152, 153 (TTAB 1973). Plaintiff has pointed to no authority that shows otherwise.

**C. Defendant Did Not Waive Any Objection to Plaintiff's Trademark Infringement Claims, Which Should Both Be Dismissed**

Plaintiff's third argument is that "[Defendant's] Motion does not address Plaintiff's second claim for Trademark Infringement, which alleges that Defendant's use of THE MARKS is likely to cause confusion. Therefore, Defendant has waived its challenge to this claim." (ECF No. 24, p. 11 (footnote omitted).) However, Defendant's Motion expressly addressed both of Plaintiff's trademark infringement claims, arguing that: (i) because the 2011 License Agreement was not properly terminated, "a dismissal of Plaintiff's breach of contract claims requires a dismissal of Plaintiff's claims for trademark infringement, as Defendant would remain licensed to use its SHARI marks in commerce under that license agreement"; and (ii) "to the extent Plaintiff contends that Defendant's license does not extend to the classes of services listed in the SHARI'S GOURMET application, its trademark infringement claims nevertheless still fail as a matter of law" because the applied-for goods and services for Defendant's SHARI'S GOURMET mark "are not proximate, or confusingly similar, to the goods for which Plaintiff has rights in its SHARI marks." (ECF No. 17-1, p. 14-15.) Thus, this argument also fails. Defendant's goods and services were either specifically authorized to be used with the SHARI marks, or did not require authorization.

**D. Plaintiff's Request for Monetary Damages and Its Failure to Seek Immediate Injunctive Relief Show that Mediation Is Required**

Plaintiff further argues that is was not required to mediate this dispute, because it properly bypassed mediation by invoking Section 7.3 of the License Agreement (ECF No. 24, p. 8). Defendant does concede that Section 7.3 of the License Agreement

provides an exception to the mandatory mediation of the Parties' contract-related disputes, but only in certain, limited, instances not applicable here.

Specifically, the License Agreement's narrow exception to the pre-suit mediation requirement applies ***only*** in cases in which Plaintiff requests injunctive relief to prevent a breach of the License Agreement, and is intended for cases in which immediate relief is necessary and monetary damages are inadequate. (ECF No. 10-1, Exhibit 2, § 7.3 (". . . Licensor may . . . seek injunctive relief to enjoin a Licensee's breach of this Agreement. . . . Licensor will be entitled to immediate injunctive relief and to obtain an order restraining any threatened or future breach.")).  This exception to mandatory mediation, however, is not applicable here.

Plaintiff's conduct is wholly inconsistent with a Licensor seeking immediate injunctive relief through a temporary restraining order to restrain a breach of the License Agreement under exigent circumstances. The alleged breach of the agreement occurred by March 14, 2018, when Defendant filed its answer containing the allegedly offending affirmative defense to Plaintiff's Opposition to Defendant's trademark application (ECF No. 10, ¶ 31). However, Plaintiff did not initially file this lawsuit until August 10, 2018—nearly ***five months*** later (ECF No. 1). Tellingly, Plaintiff's Original Complaint did not contain any claim for injunctive relief for Defendant's alleged breach of contract (*see id.* at pp. 10-11). Similarly, after filing suit, Plaintiff did not make any attempt to actually prosecute this case until after the Court issued an October 10, 2018 show cause order directing Plaintiff to state why this case should not be dismissed for lack of prosecution (ECF No. 9). In fact, it was not until Plaintiff filed its FAC on November 2, 2018, almost seven months after Defendant filed its answer in the TTAB proceeding, that Plaintiff first raised a right to injunctive relief for its breach of contract claim.

Even then, Plaintiff has never sought the "immediate injunctive relief" expressly contemplated by Section 7.3 by requesting either a preliminary injunction or a

temporary restraining order. This delay demonstrates that there is no urgency or irreparable harm to Plaintiff. *See Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *see also Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (finding a delay in seeking a preliminary injunction is a factor to be considered in granting injunctive relief, because "[b]y sleeping on its rights a plaintiff demonstrates the lack of need for speedy action" (citations omitted)).

Plaintiff argues that under Defendant's interpretation of the contract, Section 7.3 would be rendered "irrelevant" (ECF No. 24, p. 9). This is simply not true. Under Defendant's interpretation of the License Agreement, Section 7.3 applies when Plaintiff seeks only injunctive relief and takes steps to actually request that relief. In this case, however, Plaintiff: (i) is seeking monetary damages for the alleged breach (which is not allowed under § 7.3 of the 2011 License Agreement); (ii) has not been diligent in seeking injunctive relief; and (iii) has never indicated a need for immediate relief, as is envisioned under the License Agreement for Section 7.3 to apply. If Plaintiff's interpretation were correct, Section 7.2's carefully-crafted mediation provision could never be enforced, so long as Plaintiff subjectively felt that Defendant was "attacking" its marks and Plaintiff referenced in any pleading a right to *eventually* seek an injunction, however innocent Defendant's actions might actually be. This interpretation of the contract would lead to an absurd result, and should therefore be rejected. (*See* ECF No. 17-1, p. 13 (collecting statutes and cases explaining why this interpretation is incorrect).)

In short, Plaintiff has not actually taken any steps to avail itself of the "immediate injunctive relief" that it perfunctorily claims it is entitled to. Plaintiff's unexplained delays and failures to actually request injunctive relief undercut its arguments that it is

using Section 7.3 for its intended purpose, and its improper attempt to bypass mediation should be rejected.

**II. Compelling Mediation Is Well Within the Court's Authority**

Plaintiff next opposes Defendant's alternative request that the Court compel the parties to engage in the contractually-required mediation process outlined in the 2011 License Agreement if it is hesitant to dismiss this action outright, arguing that a Rule 12(b)(6) Motion is not a proper vehicle for a motion to compel mediation (ECF No. 24, p. 10). Plaintiff's argument runs contrary to the law. Plaintiff's refusal to mediate now also smacks of gamesmanship in light of the 2011 License Agreement's requirement, as well as Plaintiff's agreement to engage in private mediation in the Joint Status Report.

Plaintiff misunderstands Defendant's argument, in which Defendant requested that the Court compel mediation as an *alternative* to dismissing this action outright (which would be the relief requested under Rule 12(b)(6)). (*See* ECF No. 17-1, p. 10 n. 5 ("In the event this case is not dismissed, at the very least it should be stayed pending the outcome of the agreed mediation procedure. *Cf. Schwartz v. Westminster Servs., Inc.*, No. 8:10-cv-1722, 2010 WL 3522141, at *1 (M.D. Fla. Sept. 8, 2010) ('court routinely stay . . . proceedings to allow for implementation of the agreed-upon dispute resolution mechanism' and collecting cases).")

Courts frequently compel alternative dispute resolution procedures in response to motions that are both a motion to dismiss and a motion to compel contractually-required arbitration or mediation. *See, e.g.*, *2151 Michelson, L.P. v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints*, No. 8:17-cv-0781 DOC (DFMx), 2017 U.S. Dist. LEXIS 93326, at *1, 19 (C.D. Cal. June 16, 2017) (granting defendant's "Motion to Dismiss and Compel Arbitration"); *see also Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1247-48 (C.D. Cal. 2016) (ordering arbitration in response to defendant's motion to "motion to compel arbitration and dismiss or stay the action").

Additionally, a United States district court may compel mediation pursuant to its authority under local court rule, statute, the Federal Rules of Civil Procedure, or the Court's inherent powers. *In re Atlantic Pipe Corp.*, 304 F.3d 135, 140-145 (1st Cir. 2002) (detailing the sources of the Court's authority to mandate mediation); *see also* Civil L.R. 16-15.4 (suggested ADR procedures); General Order 11-10 (detailing this Court's ADR program).

Unless exempted by the trial judge, parties in every civil case in this District are required to participate in one of the Court's mandatory ADR procedures. Civil L.R. 16-15.1. In fact, in this very case the parties have already agreed to engage in private mediation (Joint Rule 26 Report, ECF No. 23, p. 5). If the Court does not dismiss this case outright, the parties will have to mediate their dispute in any event. Therefore, if this case is not dismissed, the Court could and should use its authority to order this required mediation to occur sooner rather than later.

**III. <u>Plaintiff Should Not Be Granted Leave to Amend Its Complaint</u>**

Finally, Plaintiff suggests that, if provided leave to amend, it might set forth "additional factual allegations" regarding Defendant's breach of the License Agreement and Plaintiff's termination thereof to demonstrate its alleged entitlement to relief in a third complaint (ECF No. 24, p. 12). Plaintiff has not, however, provided any facts not previously alleged that would, if included in a second amended complaint, alter the fact that Defendant did not actually breach the 2011 License Agreement. Because (i) the relevant facts of this case are already pled; (ii) those facts do not support Plaintiff's causes of action, (iii) Defendant's motion to dismiss does not rely on a failure of proof; and (iv) Plaintiff already had a chance to save this pleading when it filed its FAC, Plaintiff should not be granted leave to make a second, futile amendment to its Complaint.

## IV. Conclusion

Under the facts as alleged by Plaintiff, Defendant did not breach the 2011 License Agreement. By Plaintiff's own concession, Defendant's attempt to obtain trademark registration for its SHARI'S GOURMET mark was not a breach of the Parties' 2011 License Agreement. Defendant's defense raised in the opposition proceeding brought by Plaintiff is legally not an "attack" on the SHARI marks. Because Defendant did not breach the agreement, the alleged termination by Plaintiff was improper, and Plaintiff's claims for trademark infringement also fail. The Court should order mediation of this disagreement, as required by the 2011 License Agreement.

DATED: January 21, 2019

JEFFREY A. ROSENFELD
RACHEL E. K. LOWE
HOLLY SAPORITO
BRADY COX
**ALSTON & BIRD LLP**

*/s/ Jeffrey A. Rosenfeld*
Jeffrey A. Rosenfeld
Attorneys for Defendants
**PROVIDE COMMERCE, INC.**